PEOPLE v. BELLINGER.

(Supreme Court, Appellate Division, Fourth Department. May 3, 1911.)

1. ANIMALS (§ 30*)—CONTAGIOUS DISEASES—QUARANTINE—NOTICE TO OWNERS—SUFFICIENCY.

Agricultural Law (Consol. Laws 1909, c. 1) § 90, is captioned "Suppression of infectious and contagious diseases," and requires the Commissioner of Agriculture to take measures to suppress any infectious disease affecting domestic animals, and the statute also requires local boards of health to notify him of the existence of such diseases in their districts. Section 91 requires the commissioner to issue and publish a notice stating that specified diseases exist in designated districts and warning all persons to seclude all animals which may contract such disease, and provides that "such notice shall be published in such newspapers and be posted in such manner as the commissioner may designate and as in his judgment are most likely to give notice thereof." Section 97 makes one violating the terms of any notice, "issued or prescribed" by the commissioner, liable to forfeit a certain sum. *Held* that, while a notice duly published was notice to every one affected irrespective of actual knowledge, an owner of quarantined animals, having actual knowledge of the notice, was bound thereby so as to be liable for the penalty imposed for its violation, whether or not the notice was duly published and posted.

[Ed. Note.—For other cases, see Animals, Cent. Dig. § 80; Dec. Dig. § 30.*]

2. ANIMALS (§ 30*)—CONTAGIOUS DISEASES—LIBERAL CONSTRUCTION OF STATUTE.

The statute was enacted to promote the public safety and property in domestic animals, and should be construed so as to effectuate its plain purpose if possible, rather than to nullify it.

[Ed. Note.—For other cases, see Animals, Cent. Dig. § 80; Dec. Dig. § 30.*]

3. ANIMALS (§ 30*)—QUARANTINE—CONTAGIOUS DISEASES.

The statute does not require the Commissioner of Agriculture to designate "in writing" the manner in which the notice shall be published and posted, not prohibiting him from doing so orally.

[Ed. Note.—For other cases, see Animals, Cent. Dig. § 80; Dec. Dig. § 30.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Oneida County.

Action by the People of the state of New York against Fred Bellinger. From a judgment dismissing the complaint upon nonsuit, plaintiff appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Thomas Carmody, Atty. Gen., and Henry Selden Bacon, Deputy Atty. Gen., for the People.

W. T. Dunmore, for respondent.

ROBSON, J. The purpose of this action is the recovery from defendant of a penalty for an alleged violation and disregard by him of the terms of a notice issued by the Commissioner of Agriculture declaring the existence in the town of Forestport, Oneida county, of the infectious disease, known as rabies, which is specified in the notice. That the notice in due form was issued by the Commissioner of Agriculture is not questioned. Among other things, it contained an order made by the commissioner that all persons owning, having charge of, or harboring dogs in that town should "so seclude, confine, or muzzle such dogs as to make it impossible for such dogs to bite or inoculate other animals or persons." Plaintiff proved defendant's actual knowledge of this notice and his violation and disregard of its terms.

[1] The nonsuit was granted on the ground that this notice was not published and posted as required by section 91 of the agricultural law (chapter 1 of the Consolidated Laws of 1909; chapter 9 of the Laws of 1909). That part of the section material to the present inquiry reads:

"Commissioner to issue notice. He shall issue and publish a notice stating that a specified infectious or contagious disease exists in the state or in any designated county or other geographical district of the state, and warning all persons to seclude in the premises where they may be at the time all animals within the * * * district, * * * that are of a kind susceptible to contract such disease, and ordering all persons to take such precaution against the spreading of the disease as the nature thereof may in his judgment render necessary or expedient, and which he may specify in such notice. Such notice shall be published in such newspapers and be posted in such manner as the commissioner may designate, and as, in his judgment, are most likely to give notice thereof."

The trial court held that the effect of the last sentence above quoted was that the commissioner was thereby required personally in each instance, when the existence of an infectious disease was declared by him, to designate in writing the newspapers in which the notice was to be published and the manner in which it was to be posted. It was conceded that no written designation by the commissioner of the manner in which this notice was to be posted was made. The nonsuit was granted solely because of that fact and on that ground.

Section 90 of the act has this caption, "Suppression of infectious and contagious diseases." One of the provisions of this section is as follows:

"Whenever any infectious or contagious disease affecting domestic animals shall exist, be brought into or break out in this state the Commissioner

of Agriculture shall take measures to promptly suppress the same, and to prevent such disease from spreading."

The duty is imposed upon local boards of health of notifying the commissioner of the existence of such diseases in the districts subject to their jurisdiction. Manifestly the purpose of the statute is to give to the commissioner power to determine not only the existence of such a disease, but also the geographical district of the state liable to be affected thereby. Having ascertained and determined these facts, it is then his duty to issue the notice prescribed by section 91 above quoted. Though this section also provides for the posting and publication of such notice, yet it would seem that the district designated in the notice is effectually quarantined (adopting the terminology used in section 96) as soon as the commissioner makes his determination and issues the notice, and before publication and posting of the notice are completed. This must be true, if the purpose of the statute in requiring the commissioner to take measures to promptly suppress the disease is to be effectuated, for, if the quarantine is not effectually established until the notice has been posted and published for a reasonable length of time, then prompt action in suppressing the disease is impossible, and incalculable damage might be the result. This conclusion is corroborated by the provisions of section 97, which relates to fines and penalties. This section reads in part:

"Any person violating, disobeying or disregarding the term of any notice, order or regulation issued or prescribed by the commissioner under this article shall forfeit to the people of the state the sum of not less than fifty dollars nor more than one hundred dollars for every such violation."

It will be observed that the penalty is incurred by a violation of a notice which has been "issued"; and the statute does not, in terms at least, indicate that a violation of the notice can be established only when it is shown that the notice has been published and posted. The implication, and plain effect, of the provision are to the contrary.

It is apparent that the purpose of the requirement as to posting and publishing the notice is that knowledge of its contents may be given to those persons whom it affects. If it has been duly published and posted, that fact imports notice sufficiently brought home to every one, and actual knowledge of it need not be shown. But in this case plaintiff does not depend alone on this constructive notice to defendant, but shows that he had actual knowledge of the notice and its terms. Proof of actual knowledge of the notice is as effectual and quite as satisfactory as the constructive notice implied from its publication and posting, and is sufficient for the purposes of this action.

It seems also that the notice was in fact duly published and posted as the statute provides. Due publication thereof, as directed by the commissioner in writing, was proved. More than 100 copies of it were publicly posted in different places throughout the town, complying with verbal general directions given by the commissioner to his assistant commissioners as to the manner in which such notices should be posted. If the commissioner had in writing directed the notice to be posted exactly as it was shown to have been posted, it is conceded that it would have been properly posted.

[2] It cannot well be doubted that this statute was intended to promote the safety and well-being of the public and of the property of persons owning domestic animals. Enactments having such purpose have generally been accorded an equitable construction, i. e., a construction which will give effect to the clear purpose of the statute rather than one which will nullify it, if the language used permits such a construction. People v. Abraham, 16 App. Div. 58, 44 N. Y. Supp. 1077.

[3] The act does not in terms require the commissioner's designation of the manner in which the notice should be posted and published to be in writing. In effect it would seem to be optional with the commissioner whether the designation should be made in writing or verbally. It may be that a written designation would be more in accordance with usual practice; but the statute does not point to that as the only effectual way in which it can be made.

The judgment should be reversed, and a new trial granted, with costs to the appellant to abide event. All concur.